# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3995

_____

Russell J. Morris,                *
                                         *
            Appellant,          *
                                         * Appeal from the United States
     v.                           * District Court for Western
                                         * District of Missouri.
City of Chillicothe; Richard L. Knouse;  *
D. John Edwards; Charles Haney;     *
Earle Teegarden; Maurice Zion; and   *
Pam Jarding,                     *
                                         *
           Appellees.          *

_____

Submitted: October 18, 2007
Filed: January 14, 2008

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Russell J. Morris brought this action under 42 U.S.C. § 1983, claiming that the police chief of the Chillicothe, Missouri, Police Department ("the department"), various Chillicothe city council members, and the City of Chillicothe (collectively the defendants)[1] terminated him in retaliation for exercising his First Amendment right

---

[1]The individual defendants are Police Chief Richard L. Knouse, City Administrator D. John Edwards, and city council members Charles Haney, Earle Teegarden, Maurice Zion, and Pam Jarding. The City of Chillicothe, Missouri, is also a defendant.

of freedom of association with an attorney. The district court[2] granted summary judgment for defendants, concluding that Morris failed to show that his hiring an attorney was a substantial or motivating factor in his termination. Morris appeals, arguing that the district court erred in granting summary judgment because there was sufficient circumstantial evidence to show (1) defendants' firing motive was his retaining an attorney; and (2) the reasons proffered by defendants were pretextual. He also appeals the district court's finding that he neither pleaded nor proved a right of access claim. We affirm.

I. *Background*

The following facts are recited in the light most favorable to the non-moving party, Russell Morris. Morris was hired by the department, as an entry level police officer, in January 1998. He was promoted to sergeant in April 2001, and he remained in that position until his termination on April 5, 2004.

Morris's pre-firing employment record included documented performance problems. Specifically, Morris had difficulty resolving conflicts with other employees. Also, Morris ranked in the bottom one-third among other officers in the department for the number of traffic stops executed over the final four years of his employment. In 2002, Morris's captain formally notified him of concerns that Morris may have misused sick time. In 2003, via an employee performance appraisal, Morris was advised to pay closer attention to the image he projected in his work product and his accountability in covering his shift. Also in 2003, Morris was reprimanded for attending only half of the training sessions at a conference that the department paid for him to attend. According to Morris, this was a misunderstanding because he told the department that he would not attend the sessions in which he had prior training.

---

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Morris also experienced interpersonal problems with other department employees. The department's personnel policy states that an employee may be disciplined for making false or malicious statements concerning any employee or officer. Morris was aware that violations of this policy could lead to termination, but admits that he told police chief Richard Knouse that another officer had taken a bribe without knowing if the accusation was true. Morris also told fellow officers that a particular female office manager's appearance made him think she was promiscuous.

Late in the fall of 2003, Morris told a city councilman that the department was experiencing morale problems. This councilman then told the city administrator, defendant D. John Edwards, and the city attorney about Morris's concerns. On February 10, 2004, Morris, along with officer Jason Sackrey, submitted a written grievance letter to Administrator Edwards outlining problems they observed in the department. The letter alleged that a fellow officer had used excessive force on an arrestee, that the department had improperly expended city funds for overtime, and that other police officers had falsified time reports. Within two weeks of the letter's submission, Chief Knouse and Administrator Edwards met with the city attorney to discuss the possibility of demoting Morris for spreading rumors and excessive use of sick time. The city attorney recommended that Morris be terminated, but no decision was made at that time.

On February 27, 2004, the officer accused by Morris and Sackrey of using excessive force assaulted Sackrey on city property. Soon after, on March 2, 2004, the department held a mandatory meeting for all employees. During this meeting various officers referred to Morris as a "back-stabber" as well as insulting him by calling him various other names. Chief Knouse took no disciplinary action against the name-calling officers. Morris, in light of the meeting, felt he needed to retain an attorney. In the weeks after this meeting, several officers filed written grievances and complaints against Morris.

On March 29, 2004, the city council met to consider Morris's status. Chief Knouse recommended to the city council that Morris be reduced in rank because of various complaints and Morris's previous performance issues. Approval by the city council is necessary for all employee terminations or suspensions, and these actions are generally based on a recommendation by the department head. Administrator Edwards concurred with Chief Knouse's recommendation to demote Morris. The city council, however, voted to suspend Morris, with the understanding that Administrator Edwards would meet with Morris to discuss his employment situation. Chief Knouse then suspended Morris based on the city council's action.

On March 30, 2004, Morris's attorney sent a letter to the city attorney, Administrator Edwards and Chief Knouse, advising them that Morris was now represented by counsel. The next day, Chief Knouse sent an email to the entire department advising that Morris had retained counsel and that department personnel were not to speak to Morris regarding department or city matters.

Chief Knouse ordered Morris to attend a meeting with Administrator Edwards and himself on April 1, 2004. Morris did not attend this meeting because his counsel could not be present. Morris's counsel sent the department a letter stating that he could not attend. Morris's counsel instructed him not to attend.

Also on April 1, the city council met again to discuss Morris's employment status. The city attorney recommended that Morris be terminated, and three city council members voted to give Administrator Edwards the authority to handle this employment action against Morris. The city council gave Administrator Edwards the authority to offer Morris a resignation option with a severance package. Defendant council member Pam Jarding based her vote on Morris's failure to attend the meeting in violation of a direct order to attend. Defendant council member Earle Teegarden's vote was purportedly based on the city attorney's recommendation regarding Morris's poor performance. Defendant council member Maurice Zion testified that he voted to give Administrator Edwards the authority to take action because he believed that

-4-

Morris disrupted the department, affecting the safety of the other officers and the community.

Morris claims that this city council meeting was improperly called to retaliate against him for hiring an attorney, however city council members do not recall getting new information about Morris's counsel between the two meetings on March 29, 2004 and April 1, 2004. After rejecting the city's offer to resign, Morris was subsequently dismissed for "dereliction of duty, insubordination and creating a hostile work environment" on April 5, 2004. At that same time Sackrey was told that the department would be willing to reinstate him if he would sign a release regarding all claims against the city. Sackrey rejected the offer and he was also terminated.

On December 21, 2005, Morris filed the present action claiming that he was terminated in violation of his First Amendment rights of free speech and free association—Morris has since abandoned the free speech claim. Morris's complaint included the following: "Defendants terminated plaintiff's employment in retaliation for plaintiff's exercise of his First Amendment rights of free speech and expression on matters of public concern and of association (after his retention of legal counsel to represent him) and to suppress from further disclosure to the general public, the citizens of the City of Chillicothe, and other governmental officials the information reported and disclosed by plaintiff."

On November 1, 2006, the district court granted defendants' motion for summary judgment, finding that Morris did not produce any facts in support of his contention that his retention of an attorney was a substantial or motivating factor in his dismissal. The court also found that Morris failed to plead or provide evidentiary support for his right of access claim.

## II. *Discussion*

Morris appeals, arguing that the district court erred in granting summary judgment. Specifically, Morris contends that he adduced sufficient circumstantial

evidence to show that his retention of an attorney was a substantial or motivating factor for the defendants' decision to terminate him. He further contends that the defendants' proffered reasons were a pretext for the retaliatory termination. Morris also appeals the district court's finding that he neither pleaded nor proved a right of access claim. When considering the district court's grant of summary judgment, we review findings of fact for clear error and conclusions of law de novo. *ACLU Nebraska Foundation v. City of Plattsmouth*, 419 F.3d 772, 775 (8th Cir. 2005).

## A. *Standard of Review*

Summary judgment is justified if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a summary judgment motion, the district court must consider the evidence in the light most favorable to the nonmoving party and give him the benefit of all reasonable inferences in the record. *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1039 (8th Cir 2007). "The party opposing summary judgment cannot rest solely on the pleadings, but instead must set forth specific facts showing there is a genuine issue of material fact for trial. . . . Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Id.* (internal citations omitted).

In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007). Rather, we focus on whether a genuine issue of material fact exists for trial—an issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Morris contends that the district court ignored his circumstantial evidence, accepted defendants' version of the facts and neglected to give Morris the benefit of

all reasonable inferences. After careful review of the record, we find Morris's contention is unsupported. The district court included, and properly construed and addressed, all facts relevant to Morris's freedom of association claim. We note the district court did not address facts related to Morris's initial grievance, Sackrey, or the potentially false complaints against Morris. Those facts, however, while they provide background, are not relevant to Morris's freedom of association claim.

## B. *First Amendment Retaliation Claim*

This court has found that the First Amendment restrains the government from retaliating against a public employee based on the employee's speech or associations. *Hughes v. Whitmer*, 714 F.2d 1407, 1418 (8th Cir. 1983). In order for an employee to state a claim under the First Amendment, he must show that his conduct was constitutionally protected and that the protected conduct was a "substantial" or "motivating" factor in the defendant's action which resulted in dismissal. *Green v. St. Louis Housing Authority*, 911 F.2d 65, 70 (8th Cir. 1990). Whether the protected conduct was a substantial or motivating factor in an employment decision is a question of fact, but the sufficiency of the evidence to create an issue of fact for the jury is solely a question of law. *Cox v. Miller County R-I School Dist.*, 951 F.2d 927, 931 (8th Cir. 1991).

We analyze First Amendment employment retaliation claims with a three-step burden-shifting test. First, a public employee must show that he suffered an adverse employment action that was causally connected to his participation in a protected activity. *Duffy v. McPhillips*, 276 F.3d 988, 991 (8th Cir. 2002). Once the employee satisfies his initial burden, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for his or her actions. *Id.* If the employer meets this burden, the burden shifts back to the employee to show that the employer's actions were a pretext for illegal retaliation. *Id.* This third step of showing that a defendant's justification for firing is unworthy of credence is harder to overcome than the prima facie case because evidence of pretext is viewed in the light of the employer's justification. *Smith v. Allen Health Systems, Inc.* 302 F.3d 827, 834 (8th Cir. 2002).

Morris argues that the district court erred in its analysis by merging the prima facie requirements into the issue of pretext. However, assuming without deciding that Morris satisfied his initial burden of the prima facie case, summary judgment was still proper because Morris has not shown that defendants' justifications were a pretext for illegal retaliation. *See Putman v. Unity Health System*, 348 F.3d 732, 737 (8th Cir. 2003).

Assuming that Morris met his burden under the prima facie case, we must next consider if the defendants presented legitimate, nondiscriminatory reasons for Morris's termination. *Duffy v. McPhillips*, 276 F.3d 988, 991–92 (8th Cir. 2002). Defendants have met their burden here. Unrefuted evidence shows Morris's performance issues predated his protected association with his attorney, including his ranking in the bottom third of traffic stops, his spreading of a rumor, his abuse of sick leave, and his non-attendance at a conference paid for by the department. Further, the record shows that the city council voted to suspend Morris even before the department knew that he had retained counsel, and the council's stated reasons for authorizing his termination centered on the performance issues previously discussed.

As the burden shifts back to Morris, he contends that the district court erred in granting summary judgment for defendants because there was sufficient circumstantial evidence to show that defendants' reasons for his termination were pretextual. *Duffy v. McPhillips*, 276 F.3d 988, 991–92 (8th Cir. 2002). Meeting the burden under this third step is more difficult for a plaintiff than at the prima facie stage because, here, evidence of pretext and discrimination are viewed in the light of the employer's justification. *Smith,* 302 F.3d at 834. Morris has not provided a basis upon which a reasonable jury could find that defendants' justifications were pretextual.

Pretext may be shown with evidence that an employer has proffered an explanation with no basis in fact, with evidence that the plaintiffs recently received favorable reviews, or with evidence that the employer's proffered reason for its employment decision has changed substantially over time. *Id*. Here, defendants'

nondiscriminatory explanation has a basis in the factual record, defendants' justification for Morris's termination has been consistently centered on his performance issues, and the record does not contain any recent favorable reviews for Morris.

Morris emphasizes the time-line of events to support his allegations—on March 29th the city council voted only to suspend Morris, on March 30th Morris's attorney made himself known to the department and the city, and on April 1st the city council voted to give Edwards the authority to terminate Morris. Temporal proximity alone, however, is not enough to support a finding of pretext. We have held that the fact that a plaintiff is terminated after engaging in a protected activity is not sufficient to support an inference of pretext, even though temporal proximity may sometimes be enough to get a plaintiff past the prima facie stage. *Smith,* 302 F.3d at 834. In this case, the timing of events is not enough to support a finding of pretext. Here, the record reflects that defendants' were concerned about Morris's performance long before he retained counsel.

Morris also claims that the department's departure from their progressive discipline policy shows pretext. Deviance from a progressive discipline policy can be evidence of pretext, but here, the department's employee manual and related documents specifically state that the department is not bound by any number of warnings and that it can fire at-will employees without warning if necessary. We have found such caveats in an employee policy negate its persuasiveness in showing pretext. *Id* at 835.

Morris also focuses on the council's treatment of his co-officer, Sackrey, as evidence of pretext. Sackrey is not a party to this case, but, as explained above, Sackrey filed the same grievance against the department as Morris and was later terminated. Morris points out that one city council member claims she made the decision to terminate Morris based on the fact that he had been insubordinate by not attending the April 1st meeting. Morris draws attention to the fact that Sackrey also

did not attend that meeting, and instead of deciding to terminate Sackrey based on that fact, the city council decided he could stay with the department if he waived his claims against the department. However, this comparison hurts Morris more than it helps him because Sackrey and Morris hired the same attorney, and Sackrey hired the attorney before Morris did. The city knew Sackrey had hired this attorney and yet they offered to keep Sackrey on the force. If the department and the city wanted to retaliate against officers for hiring attorneys, they likely would not have offered Sackrey continued employment.

Viewing the evidence in the light of the employer's justification, Morris has not provided a basis upon which a reasonable jury could find that defendants' justifications for terminating Morris were pretextual. Therefore, the district court did not err in granting summary judgment for defendants.

## C. *Right of Access*

Lastly, Morris argues that the district court erred in finding that he had not sufficiently pled his right of access claim. We review this issue de novo. *ACLU Nebraska Foundation,* 419 F.3d at 775.

We have held that "[t]he right of access to the courts is well-established. The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant. While the right to access the courts exists, the Supreme Court and our court have recognized that the constitutional basis for the right is 'unsettled.'" *Scheeler v. City of St. Cloud*, 402 F.3d 826, 830 (8th Cir. 2005). In some circumstances, we have held that the right to access derives from the First Amendment. *Id*. In order to prevail on such a claim, a plaintiff must show that the defendants acted with some intentional motivation to restrict his access to the courts. *Id*. The plaintiff must show government action was designed to prevent access to the courts. *Id*.

The district court found that in Morris's complaint, he did not plead a right of access claim. The language where Morris alleges that he pleaded this claim follows: "Defendants terminated plaintiff's employment in retaliation for plaintiff's exercise of his First Amendment rights of free speech and expression on matters of public concern and of association (after his retention of legal counsel to represent him) and to suppress from further disclosure to the general public, the citizens of the City of Chillicothe, and other governmental officials the information reported and disclosed by plaintiff." We agree with the district court that Morris's complaint fails to plead a right of access claim. The defendants could not have been put on notice by this language that they were alleged to have denied Morris access to the courts.

Further, reviewing the record in the light most favorable to Morris, he has not provided evidence that defendants intentionally conspired to keep him out of court. Morris claims that once the city council heard that he had an attorney they called a special meeting to fire him, but he has presented no evidence to support that claim. Thus, Morris has failed to provide evidence upon which a reasonable jury could find that he was terminated as a result of defendants' intentional motivation to deny him access to the courts.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____