# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-3605
_____

Timothy Skalsky

*Plaintiff - Appellant*

v.

Independent School District No. 743, Sauk Centre Public Schools; Dan Brooks, individually and in his official capacity as Superintendent of Schools; John Messer, individually and in his official capacity as Director of Maintenance

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 7, 2014
Filed: November 28, 2014

_____

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____


RILEY, Chief Judge.

Timothy Skalsky appeals the district court's[1] grant of summary judgment in favor of Dan Brooks, John Messer, and Independent School District 743, Sauk Centre Public Schools (district), on his claims under 42 U.S.C. § 1983; the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08; and state tort law. The district court found the record evidence did not establish any genuine dispute of material fact or sufficient evidence to show (1) Skalsky's association with his wife was a substantial or motivating factor in his alleged constructive discharge; (2) appellees' proffered reason for Skalsky's reassignment was pretext; or (3) the requisite personal motive necessary for a tortious interference with a contract claim. We affirm.[2]

## I.    BACKGROUND

The following facts are stated in the light most favorable to Skalsky. See Hughes v. Stottlemyre, 454 F.3d 791, 793 (8th Cir. 2006). In February 2009, the district hired Skalsky as a substitute custodian—later promoting him to full-time custodian. On April 19, 2011, the school board held a public meeting to receive community input about budgetary issues facing the district. At that meeting, Kirsten Skalsky, Skalsky's wife, speaking as a member of the public, suggested the school board should consider sharing a superintendent and eliminating a principal. Skalsky contends his wife's suggestion upset Brooks, the district superintendent, because Brooks's employment status with the district had recently been changed to "at will." Just a week before Skalsky's wife spoke, Brooks resigned his position as superintendent with the district and became an independent contractor under a contract between the district and a company providing administrative services to school districts. Either the district or the company could terminate the contract with sixty days written notice.

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2]We have appellate jurisdiction under 28 U.S.C. § 1291.

On April 21, the school board approved the elimination of two part-time custodial positions and a restructuring of the custodial assignments. On April 25, six days after Skalsky's wife spoke at the board meeting, Messer told Skalsky he was being reassigned to the afternoon shift (1:30 p.m. to 10:30 p.m.) and would be assigned both indoor and outdoor duties during the summer months. Messer, as director of buildings and grounds, was responsible for establishing the work schedules for the custodial staff and testified he felt Skalsky was the "best fit for the position." Messer stated he wanted "to give this a try and see how it would work."

Skalsky was very concerned about the reassignment because of his severe allergy to bee stings. Skalsky obtained a doctor's note stating Skalsky "has a history of severe allergic reaction[s] to the stings of bees and wasps." The note did not seek or recommend excusing Skalsky from performing any work duties.[3] Skalsky also was concerned that the work schedule change would conflict with his baseball coaching schedule for his son's team. Skalsky told Messer he would be contacting his union representative to question the district's authority to reassign him. The union representative informed Skalsky the district had this authority and advised Skalsky to follow the union's grievance process. Skalsky never filed a grievance.

Skalsky also complains the district adversely changed his working conditions as a result of his wife's speech. Specifically, he claims (1) his desk was moved within view of a surveillance camera; (2) the time clock was advanced 25-27 minutes, which would have resulted in him clocking in at an incorrect time had he not noticed; and (3) doors for which he was responsible were left unlocked, which he claims was out of character for him. On May 23, 2011, Skalsky gave his resignation letter to Messer. Skalsky alleges appellees made his working conditions "uniquely intolerable" to force

---

[3]The doctor's office notes for Skalsky's visit report Skalsky was "not sure that he wants to do the outdoor work and doesn't want to be medically excused for it but just would like something in writing about his bee stings."

him to quit. Skalsky's resignation letter stated his last day of work would be June 3, 2011, the date his schedule was to change to the afternoon shift.

## II. DISCUSSION

"We review the district court's grant of summary judgment de novo." Hughes, 454 F.3d at 796. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. First Amendment Retaliation

Skalsky contends the district violated his First Amendment right to associate freely with his wife when the defendants changed his schedule in retaliation for her speaking at the board meeting. "To establish a prima facie case of [First Amendment] retaliation, [Skalsky] must allege and prove that: (1) [he] engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against [him]; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action."[4] Davison v. City of Minneapolis, 490 F.3d 648, 654-55 (8th Cir. 2007). "If the plaintiff meets this burden, the burden shifts to the defendant to demonstrate that the same employment action would have been taken in the absence of the protected activity." Id. at 655 (citing Mt. Healthy, 429 U.S. at 287).

Appellees contest both (1) whether Skalsky's protected activity was a substantial or motivating factor in the decision to reassign him, and (2) whether Skalsky suffered an adverse employment action. "Whether protected conduct was a substantial or motivating factor in an employment decision is a question of fact."

---

[4]When applying this test, the Supreme Court uses both the words "substantial" and "motivating." See Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977).

Stever v. Indep. Sch. Dist. No. 625, St. Paul, 943 F.2d 845, 851 (8th Cir. 1991). "The sufficiency of the evidence to create an issue of fact for the jury, however, is solely a question of law." Id.

Skalsky contends Brooks was upset by the content of his wife's speech because of the recent change in Brooks's employment status. Skalsky also argues Brooks displayed animosity toward him and his wife after her speech. Skalsky points to an email conversation four days after the board meeting among Brooks and the school principals in which Brooks asked if anyone else knew of "Kiersten [sic] S." Upon learning the identity of the speaker, Brooks responded, "As the world turns . . . ." (Ellipses in original) Skalsky also points to an email conversation between Brooks and a local reporter as additional evidence of Brooks's alleged animosity. On June 29, 2011, the reporter emailed Brooks "to give [him] a heads up" about Kirsten Skalsky's letter to the editor. Brooks responded, "Thanks for the 'heads up.' Honestly even the source has not caused me to hop on this."

But Skalsky does not provide evidence of a connection between Brooks's comments and Skalsky's reassignment. The undisputed evidence shows the district had to make budget cuts because it was experiencing financial problems. As a result, the position of the part-time custodian responsible for most of the outdoor duties was eliminated, and those custodial responsibilities were allocated to the remaining employees. Furthermore, Messer was willing to be flexible with Skalsky's hours. Skalsky does not dispute that Messer chose who to reassign, and Skalsky fails to present evidence Messer had a motive to retaliate.

Skalsky also contends that the district's given reason for reassignment was false because it did not save any money in reassigning him as opposed to someone else. Appellees do not argue they saved money by reassigning Skalsky as opposed to someone else, but do argue they saved money by eliminating the primarily outdoor custodial position. Skalsky also asserts there was a more qualified person to perform the outdoor duties because this other person performed some of the outdoor duties

-5-

when the part-time custodian needed help. Messer testified he considers a number of things when placing custodians in work assignments, including their personalities and work practices, and Messer "felt [Skalsky] was the best fit for the position." There is insufficient evidence to support Skalsky's contention he was less qualified for the position. In fact, Skalsky had worked the 3:30 p.m. to 10:30 p.m. shift during five weeks of the summer of 2009.

Skalsky maintains the fact that he was reassigned a mere six days after his wife's speech proves his retaliation claim. "[T]emporal proximity between protected activity and an adverse employment action" can constitute evidence the protected activity was a substantial or motivating factor. Davison, 490 F.3d at 657. However, this temporal proximity, by itself, cannot show retaliatory motive. See Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) ("[A] mere coincidence of timing can rarely be sufficient to establish a submissible case of retaliatory discharge." (quotation omitted)); Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."). Furthermore, "[a] plaintiff's prima facie retaliation case, built on temporal proximity, is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 1001 (8th Cir. 2011). In addition, evidence that a problem predated the protected conduct lessens the significance of temporal proximity. See id.

The evidence, viewed in the light most favorable to Skalsky, shows the district reassigned him to a position for which he was well qualified as part of a plan to address ongoing financial difficulties. Assuming Skalsky suffered an adverse employment action, no reasonable jury could conclude Skalsky's evidence is sufficient to show his wife's speech was a substantial or motivating factor in the district's decision to reassign him.

## B. Marital Status Discrimination

Skalsky next contends the district discriminated against him because of his marriage to Kirsten Skalsky in violation of Minn. Stat. § 363A.08, subd. 2. In Minnesota, married persons are members of a protected group for marital status discrimination claims. Cf. Taylor v. LSI Corp. of Am., 796 N.W.2d 153, 157 (Minn. 2011). The MHRA prohibits discrimination based on the "identity, situation, actions, or beliefs of a spouse." Minn. Stat. § 363A.03, subd. 24; see also id. § 363A.08, subd. 2. MHRA claims are analyzed under the burden-shifting test of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973). See Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 542 (Minn. 2001) (en banc). This requires the plaintiff first establish a "prima facie case of . . . discrimination." McDonnell Douglas, at 802. If the plaintiff meets that burden, "[t]he burden then must shift to the employer to articulate a legitimate, nondiscriminatory reason" for taking the adverse employment action. Id. If the employer does so, the plaintiff must then show the proffered reason was mere pretext for discrimination. See id. at 804.

Assuming Skalsky met his initial burden, appellees have articulated a legitimate, non-discriminatory reason for their decision to reassign him: reassignment was necessary after the district eliminated the primarily outdoor custodial position. Skalsky thus must "offer proof that would allow a rational fact-finder to conclude that the proffered reason was not the true reason for the employment action." Yates v. Rexton, Inc., 267 F.3d 793, 800 (8th Cir. 2001) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)). He can do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Pye v. Nu Aire, Inc., 641 F.3d 1011, 1021 (8th Cir. 2011) (quotation omitted). "It is not enough . . . to *dis*believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination." McCullough v. Real Foods, Inc., 140 F.3d 1123, 1128 (8th Cir. 1998) (quoting Hicks, 509 U.S. at 519).

Skalsky attempts to show pretext by pointing to the fact his job duties were changed shortly after his wife spoke at the school board meeting. Again, temporal proximity alone is not sufficient. See Morris v. City of Chillicothe, 512 F.3d 1013, 1019-20 (8th Cir. 2008) ("[T]he fact that a plaintiff is terminated after engaging in protected activity is not sufficient to support an inference of pretext, even though temporal proximity may sometimes be enough to get a plaintiff past the prima facie stage."). In Morris, in addition to providing evidence of temporal proximity, the plaintiff presented evidence of his employer's departure from its disciplinary policy and its similar treatment of his co-officer. See id. at 1020. We still found Morris had not provided sufficient evidence of pretext to survive summary judgment. See id.

Skalsky adduces less evidence than we decided was insufficient in Morris. Skalsky questions appellees' decision to assign him the outdoor duties, but simply questioning Messer's opinion that Skalsky was the best fit for the position does not establish that appellees' reasons for selecting him were pretext for discrimination. See Moody v. St. Charles Cnty., 23 F.3d 1410, 1412 (8th Cir. 1994) ("A mere scintilla of evidence is insufficient to avoid summary judgment."). When viewed in the light most favorable to Skalsky, the evidence does not create a genuine dispute of material fact for a jury to decide.

## C.    Tortious Interference with a Contract

Skalsky claims Brooks and Messer interfered with his employment out of a personal motive to harm him in retaliation for his wife's speech. Under Minnesota law, an individual who takes an adverse action against an employee—even an at-will employee—for personal reasons may be "act[ing] outside the scope of [the individual's] duties" and may be liable for tortiously interfering with the employee's contract. Nordling v. N. States Power Co., 478 N.W.2d 498, 505-06 (Minn. 1991) (en banc). If the plaintiff proves "motive or malice"—that is, proof that actions were taken as a result of "personal ill-will, spite, hostility, or a deliberate intent to harm the

employee"—the plaintiff establishes the individual acted outside the scope of his duties. Id. at 506-07.

Skalsky claims Brooks and Messer reassigned him knowing the new assignment threatened his life because of his bee sting allergy. In Skalsky's view, only those motivated by malice would have acted in this manner. Skalsky's preemployment physical did not place any restrictions on his work, and he never sought to be medically excused from performing outdoor duties. This evidence fails to suggest either Brooks or Messer had reason to believe Skalsky's allergy posed a life-threatening danger. Because the record does not contain evidence showing Brooks and Messer knew about the allergy or its severity at the time of reassignment, Skalsky failed to produce sufficient evidence to indicate Brooks and Messer acted with malice. The district court correctly granted summary judgment on Skalsky's tortious interference claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment.

_____