# United States Court of Appeals
### For the Eighth Circuit

———————————

No. 18-3298

———————————

Randy Henry

*Plaintiff - Appellant*

v.

J. Bret Johnson, in his individual capacity; Corey Schoeneberg, in his individual capacity; Stacey Mosher, in her individual capacity; Ronald K. Replogle, in his individual capacity; Luke Vislay, in his individual capacity; Sarah Eberhard, in her individual capacity; Gregory D. Kindle, in his individual capacity; Sandra K. Karsten, in her individual capacity; Gregory K. Smith, in his individual capacity; Malik A. Henderson, in his individual capacity; Kemp A. Shoun, in his individual capacity

*Defendants - Appellees*

———————————

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

———————————

Submitted: November 13, 2019
Filed: February 20, 2020

———————————

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

———————————

GRASZ, Circuit Judge.

Sergeant Randy Henry sued eleven members or former members of the Missouri State Highway Patrol ("MSHP") after adverse employment actions were allegedly taken against him in retaliation for protected First Amendment speech. The district court[1] granted summary judgment to each of the eleven defendants on all seven claims. Henry appeals the grant of summary judgment for three of these claims. We affirm.

## I. Background

This suit arises out of the May 2014 drowning of twenty-year-old Brandon Ellingson while he was in MSHP custody on the Lake of the Ozarks. Ellingson's death resulted in a series of civil and criminal cases and internal MSHP investigations of the drowning. While these investigations were occurring, MSHP Sergeant Randy Henry spoke out several times about MSHP's role in the drowning.

In October 2014, Henry testified twice before a special committee of the Missouri legislature organized to look into a 2011 merger of the Missouri Highway Patrol with the Missouri Water Patrol — the combined entity now known as MSHP. Henry first testified in his official capacity as an MSHP member, and later testified in plain clothes as a private citizen. In June 2015, Henry also gave deposition testimony for a civil lawsuit concerning the Ellingson case. These instances make up what will be referred to as Henry's "testimonial speech."

Henry also spoke numerous times to a member of the press and members of the Ellingson family about what he claimed was an internal MSHP cover-up of the drowning. Henry also raised the possibility of internal MSHP corruption during the

---

[1] The Honorable Willie J. Epps, Jr., United States Magistrate Judge for the Western District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

investigation of the Ellingson drowning by insinuating the special prosecutor in the case may have been involved in a quid pro quo with MSHP to exonerate her son in a rape investigation. Henry posted this allegation on a Facebook page dedicated to Ellingson. The social media post outlined how the son was cleared of the rape allegation after a DNA analysis was undertaken by MSHP, and suggested the special prosecutor had a conflict of interest because of this DNA test.

The special prosecutor interviewed Henry as a part of her MSHP investigation and during the interview he admitted to spreading information about her son. After her interview with Henry, she recused herself from the Ellingson investigation. This caused both a prolonged delay in the investigation and increased costs.

In February 2015, Henry was ordered to attend a mandatory counseling evaluation through the Employee Assistance Program ("EAP"). The mandatory counseling evaluation arose after at least two individuals expressed concern about how Henry was coping with the Ellingson matter.

In March 2015, the special prosecutor filed a complaint against Henry which was investigated by Appellee Corey Schoeneberg. Schoeneberg determined Henry had violated three MSHP General Orders, which led to two prosecutors asserting they would no longer prosecute charges brought by Henry due to concerns about his trustworthiness and integrity.

In June 2015, Henry's direct commander submitted a Betterment of the Patrol Transfer Request for Henry to be transferred out of Troop F. This request was approved by Appellee J. Bret Johnson, who was the superintendent at the time. Formal charges and an offer of discipline were served on Henry later that month. This offer of discipline was a reduction in rank from sergeant to corporal. Henry rejected this offer, pursued an appeal, requested three continuances, and then retired before a hearing could take place.

A later investigation of MSHP by a second special prosecutor regarding the Ellingson drowning concluded Henry's allegations of MSHP misconduct were unsubstantiated.

Henry ultimately filed a seven count complaint against eleven defendants including Count One, a 42 U.S.C. § 1983 claim for retaliation for protected First Amendment speech activity; Count Three, a conspiracy to violate Henry's civil rights; and Count Four, a § 1983 failure to supervise claim. The district court granted the defendants' motion for summary judgment on all seven claims against all eleven defendants. Henry now appeals this grant of summary judgment regarding Counts One, Three, and Four.

## II. Analysis

### A. Standard of Review

We review de novo a grant of summary judgment.[2] *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013). In a § 1983 action, we will reverse an award of summary judgment in favor of a public official in his or her individual capacity only if a reasonable jury could find the official's actions performed under the color of state law "violated 'a right secured by the Constitution and laws of the United States.'" *Id.* (quoting *Cook v. City of Bella Villa*, 582 F.3d 840, 848 (8th Cir. 2009)). We must view all evidence and reasonable inferences in the light most favorable to the non-moving party. *Id.*

---

[2]On appeal Henry argues the district court misapplied the summary judgment standard by relying on facts he asserts are in dispute. We disagree. The district court properly applied both the local and federal summary judgment standards by finding there were no genuinely disputed facts, and by relying on such undisputed facts in the order.

## B. Unconstitutional Retaliation for Protected Speech Activity

Henry alleges unlawful retaliation by MSHP for protected speech, in violation of the First Amendment. In response, the appellees claim they are entitled to summary judgment based on qualified immunity. As with every qualified immunity analysis, we are tasked with a two-part inquiry to determine whether (1) a constitutional violation occurred, and (2) whether the right in question was clearly established at the time of the violation. *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014). The district court reasoned Henry failed to demonstrate a First Amendment violation, and therefore the eleven defendants were entitled to qualified immunity. We agree.

Our first inquiry is whether Henry has established a First Amendment violation. "To establish a prima-facie case of unlawful retaliation for protected speech," Henry must prove three elements. *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009). First, Henry must prove "he engaged in an activity protected by the First Amendment." *Id.* Second, Henry must prove MSHP "took an adverse employment action against him." *Id.* And third, Henry must prove the "protected speech was a substantial or motivating factor in [MSHP's] decision to take the adverse employment action." *Id.* We address each element in turn.

### 1. Constitutionally Protected Speech

Henry alleges, and the appellees do not contest on appeal, that Henry's testimonial speech is protected speech activity. As such the testimonial statements satisfy element one. However, Henry also argues his remaining speech activity — speaking to news reporters, directly to the Ellingson family, and on social media — that is, his non-testimonial speech, addressed a public concern. In our view, however, he fails to show the remaining speech was constitutionally protected.

Under Eighth Circuit precedent, we must proceed through a multi-step analysis to determine if Henry's non-testimonial speech is entitled to First Amendment protection. First, we must "determin[e] whether the employee spoke as a citizen on a matter of public concern." *Hemminghaus v. Missouri*, 756 F.3d 1100, 1110 (8th Cir. 2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). "If the answer is yes, then the possibility of a First Amendment claim arises." *Id.* at 1111 (quoting same).

Next, once the possibility of a First Amendment claim arises, "we must ask whether [MSHP] has produced evidence to indicate the speech had an adverse impact on the efficiency of the [employer's] operations." *Id.* (second alteration in original) (quoting *Lindsey v. City of Orrick*, 491 F.3d 892, 900 (8th Cir. 2007)). "Where there is no evidence of disruption, resort to the *Pickering* factors is unnecessary because there are no government interests in efficiency to weigh against First Amendment interests."[3] *Id.* (quoting *Belk v. City of Eldon*, 228 F.3d 872, 881 (8th Cir. 2000)).

Finally, "if such an adverse impact is found, the court engages in the *Pickering* balancing inquiry." *Id.* at 1111. This analysis helps to determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418. The *Pickering* test strives to help courts arrive at a balance between the interests of the employee as a citizen commenting on public matters and the interests of the governmental employer in promoting the efficiency of its public services through such employees. *Kincade v. City of Blue Springs*, 64 F.3d 389, 395 (8th Cir. 1995).

---

[3] *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

### a. Speaking on a Matter of Public Concern

Here, it is undisputed that Henry spoke as a private citizen, not an employee, while making his non-testimonial statements. Therefore, to proceed we must determine if Henry's non-testimonial speech was on a matter of public concern. When the speech in question "involves a matter of political, social or other concern to the community [it] is of public concern." *Calvit v. Minneapolis Pub. Sch.*, 122 F.3d 1112, 1117 (8th Cir. 1997). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). The form and content help us to determine whether the employee speaks as "a concerned citizen informing the public" or "merely as an employee speaking about internal practices relevant only to fellow employees." *Calvit*, 122 F.3d at 1117.

In this case, Henry's speech, taken in the light most favorable to him, was of public concern. The statements on social media, to the Ellingson family, and to the newspaper all concerned the integrity of MSHP and the judicial system. Henry also spoke critically of the internal investigation, suggesting purported corruption in the prosecutor's office. Such statements are related to the integrity of the highway patrol and prosecutorial division of MSHP — both important governmental functions. We therefore conclude his non-testimonial speech addressed matters of public concern.

Because Henry spoke as a citizen on matters of public concern the possibility of a First Amendment claim arises and we must proceed to ask whether MSHP has produced evidence of an adverse impact on the efficiency of its operations.

### b. Adverse Impact on Governmental Efficiency

Next, a public employer must "with specificity, demonstrate the speech at issue created workplace disharmony, impeded the plaintiff's performance, or impaired

working relationships." *Lindsey*, 491 F.3d at 900. However, it is not necessary to show actual disruption. An employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick*, 461 U.S. at 152. Courts will give "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern." *Waters v. Churchill*, 511 U.S. 661, 673 (1994). Our precedent has noted how "[l]aw enforcement agencies, more than other public employers, have special organizational needs that permit greater restrictions on employee speech." *Morgan v. Robinson*, 920 F.3d 521, 526 (8th Cir. 2019) (en banc) (quoting *Buzek v. Cty. of Saunders*, 972 F.2d 992, 995 (8th Cir. 1992)).

Here, MSHP has shown sufficient evidence of disruption to the efficiency of its operations. The undisputed facts demonstrate that two prosecutors refused to take Henry's cases citing to a lack of trust and integrity issues with Henry. If prosecutors will no longer press charges from a particular police officer, this would seriously impede the agency's ability to perform its function. Further, the investigation by Appellee Schoeneberg concluded Henry violated three MSHP General Orders, two relating to workplace disruption and inefficiency. Specifically, Schoeneberg's investigation concluded Henry's behavior violated a General Order prohibiting the spread of "malicious rumors or lies, disrupt the workplace, or destructively criticize or maliciously ridicule the Patrol . . . ." When, as here, a government employer relies substantially on the working relationships among its members, trust and morale are of prime importance. This reality is only heightened for law enforcement officers who may have to rely on one another in life-threatening circumstances.

Because MSHP demonstrated a deterioration in trust within Henry's troop and that Henry engaged in unprofessional behaviors that violated General Orders, MSHP has demonstrated Henry's speech did in fact create disharmony and impair working relationships. The consequences of Henry's actions were "sufficient evidence of

disruption." *Hemminghaus*, 756 F.3d at 1113 (quoting *Bailey v. Dep't of Elementary & Secondary Educ.*, 451 F.3d 514, 521 (8th Cir. 2006)).

### c. *Pickering* Balancing

Under the Supreme Court's precedent in *Pickering*, we must take into account "a number of interrelated factors . . . in balancing the competing interests of government-employer and citizen-employee." *Id.* at 1113. Such factors include:

> (1) the need for harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question has caused or would cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties.

*Id.* at 1114. As we have repeatedly recognized, "[m]ore so than the typical government employer, the [Missouri Highway] Patrol has a significant government interest in regulating the speech activities of its officers in order to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in the law enforcement institution." *Morgan*, 920 F.3d at 526 (second alternation in the original) (quoting *Crain v. Bd. of Police Comm'rs*, 920 F.2d 1402, 1411 (8th Cir. 1990)).

Henry's allegations evoking a high degree of public interest weigh in Henry's favor. The remaining *Pickering* factors, however, favor MSHP. First, the manner and place of Henry's speech weighs heavily in MSHP's favor. Henry spoke directly to the Ellingson family during the internal investigation, and he spread unsubstantiated information by repeatedly speaking to a news reporter and on social media. Second, unlike a legitimate whistleblower, Henry did not substantiate the allegations — especially those involving the special prosecutor and her son — before

-9-

spreading the information to the internet. Third, Henry's role as a police officer is closely tied both to the officers in his troop and the prosecutors who brought charges connected to officer arrests. It was essential for Henry to work closely with the appellees. The evidence reveals the accusations Henry shared online and to the family deteriorated relationships with prosecutors, as evidenced by the two who refused to take his cases. Further, the transfer request demonstrates Henry's deteriorating ability to work with his fellow police officers. And finally, the context of this dispute — during a sensitive internal investigation and amid media attention — further tips the scale toward MSHP's interests.

The cumulation of these factors weigh in favor of MSHP's interest in efficiency and indicate Henry's speech activity was more likely than not impeding his ability to perform his job duties as a police officer. As such, we conclude Henry's non-testimonial speech activity was unprotected. Therefore, no First Amendment violation occurred. The defendants are entitled to qualified immunity regarding Henry's speech to the Ellingson family, on social media, and to the news reporter because Henry failed to show a constitutional violation. Our analysis of Henry's claim of retaliation based on constitutionally protected speech ends here regarding the non-testimonial speech.

## 2. Adverse Employment Action

We now proceed to element two of the prima facie case for unlawful retaliation for protected speech only as to Henry's protected testimonial speech. Henry alleges the adverse employment actions taken against him by MSHP include the mandatory EAP counseling evaluation and his proposed demotion and transfer. The defendants do not contest the initial referral to EAP nor the later demotion and transfer offer arrangement constituted adverse employment actions. Therefore, we conclude the second element of the prima facie case is satisfied.

### 3. Substantial or Motivating Factor

Finally, we must determine whether Henry's *protected* speech activity — the testimonial speech — was a substantial or motivating factor in MSHP's decision to take the aforementioned adverse employment actions. *Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007). While causation is generally a jury question, this court must decide if sufficient evidence exists to create a factual question for the jury. *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008). To make this determination we must undertake an additional three-part, burden-shifting inquiry: First, "a public employee must show that he suffered an adverse employment action that was causally connected to his participation in a protected activity." *Id.* at 1018–19. If the employee so demonstrates, "the burden shifts to the employer to show a legitimate, nondiscriminatory reason for his or her actions." *Id.* at 1019. If the employer establishes such a reason, "the burden shifts back to the employee to show that the employer's actions were a pretext for illegal retaliation." *Id.*

Because Henry and the appellees agree Henry suffered an adverse employment action, we will assume without deciding Henry met his initial burden, even though the causation question is not without doubt. The burden thus shifts to MSHP to show a legitimate, nondiscriminatory reason for these adverse employment actions.

Because Henry's non-testimonial speech was unprotected by the First Amendment, such speech may serve as a legitimate ground for an adverse employment action. The facts show Henry repeatedly discussed serious and unverified allegations of corruption within MSHP, was less than candid with the special prosecutor, and disseminated unverified allegations of corruption. Each of these unprotected speech activities *could* constitute a legitimate, nondiscriminatory reason for MSHP to take an adverse employment action against Henry. Additionally, the mandatory EAP counseling appointment occurred as a response to two individuals

expressing concern about Henry's mental health — a legitimate reason for such an assignment.[4]  As such, we determine MSHP met its burden to show a legitimate reason for the actions taken against Henry.  As a result, the burden shifts back to Henry to show pretext.

For Henry to prevail then, he must establish a factual question exists as to whether MSHP's reasons were mere pretext, a difficult burden to prove "because evidence of pretext and discrimination is viewed in the light of the employer's justifications." *Id.* at 1019.  Such a pretext typically may be shown by offering evidence the employer's explanation lacked basis in fact, evidence the employee recently received favorable reviews, evidence the employer's proffered reason for its employment decision changed over time, or with evidence the employer treated similarly situated employees who engaged in the protected activity more favorably. *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 935 (8th Cir. 2014).

Here, MSHP's disciplinary actions were based in fact: they specifically related to Henry's posting to social media, speaking to the news reporter, and conversing with the Ellingson family.  These occurrences are established and undisputed.  And although Henry did receive a generally positive review on January 24, 2015, this review was given before the full extent of Henry's conduct became known to MSHP.  And, even in this favorable review it noted, "there always seems to be someone [Henry] is upset with or that is upset with him."  There is no evidence to support an inference that MSHP's reasons for the adverse action changed over time.

Henry argues three other MSHP members were retaliated against for speaking out against MSHP.  But Henry has failed to show that these three individuals were similarly situated to himself other than asserting they are MSHP members.  To satisfy

---

[4]This court also assumes, without deciding, the referral of an employee to a mandatory mental health evaluation constitutes an adverse employment action.

this prong, "comparators 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id.* at 925. Henry presented no evidence these other individuals met any of these criteria.

In summary, the appellees are entitled to qualified immunity with regard to Count One because Henry has failed as a matter of law to show a constitutional violation. Much of Henry's speech is unprotected because it fails the *Pickering* balancing test as MSHP's interests in efficiency and harmony overrides the public's interest in the information. The remaining testimonial speech was not a substantial or motivating factor in the adverse employment actions against Henry.

### C. Conspiracy and Inadequate Supervision

Our conclusion regarding Henry's First Amendment claim dictates the result as to his conspiracy and inadequate supervision claims. Under our precedent, Henry is "required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Similarly, a failure to supervise claim brought under § 1983 will "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immigration & Customs Enf't*, 849 F.3d 408, 419–20 (8th Cir. 2017). We therefore hold Henry's civil conspiracy and failure to supervise claims fail as a matter of law.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____

-13-