# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-3668
_____

Thomas Noon; Christopher Skidmore; Candice Skidmore

*Plaintiffs - Appellees*

v.

City of Platte Woods, Missouri

*Defendant*

Mayor John Smedley; Chief of Police Jim Kerns

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Western District of Missouri
_____

Submitted: December 13, 2023
Filed: March 4, 2024
_____

Before SMITH, Chief Judge, GRUENDER and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Former Platte Woods, Missouri, police officers Thomas Noon and Christopher Skidmore (collectively, "the Officers") were terminated from their jobs

after they submitted a letter to Platte Woods Mayor John Smedley and the city's Board of Aldermen containing various grievances about the police chief, James Kerns. The officers sued Smedley and Kerns, alleging First Amendment retaliation under 42 U.S.C. § 1983. Smedley and Kerns moved for summary judgment based on qualified immunity, and the district court denied their motion. Smedley and Kerns now bring this interlocutory appeal. We affirm.[1]

## I.

Noon and Skidmore were officers with the Platte Woods, Missouri Police Department (the "Department"). Over the course of their employment, the Officers raised several concerns about Kerns's performance as Chief of Police. Skidmore notified Kerns that Department vehicles were not operating properly and radar equipment gave false readings. Noon also raised concerns about personnel issues and Kerns's use of Department time to conduct personal business. The Officers claim Kerns failed to address any of these concerns.

On September 9, 2019, frustrated with the Department's management, Noon met with Kerns. During this meeting, Noon encouraged Kerns to resign as Chief of Police and handed Kerns a pre-drafted resignation letter. Kerns did not resign.

The Officers decided to take further action. On September 12, 2019, they sent a document (the "Complaint Packet") outlining their concerns about the Department to Smedley and the Platte Woods Board of Aldermen. The Complaint Packet was sent anonymously, and it included a list of complaints about Kerns's leadership, which "led to chronic, systemic and significant issues within the Department." The Complaint Packet also included a copy of the Department's standard operating procedures and noted "over 180 violations" and "a supplemental document with numerous other examples of specific public safety concerns or simply things that

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

discourage officers." The document concluded by stating, "it is our belief that our oath of office to serve the community requires this action."

By mid-November, an investigation into the Complaint Packet's allegations had yet to commence. This prompted Noon and Skidmore to inform Smedley they had authored the document. Following this admission, in late November 2019, Skidmore's job duties changed so that he was no longer able to assign shifts.

On December 4, 2019, a local newspaper wrote about the Complaint Packet's allegations. Two days later, Kerns learned someone anonymously sent an email containing the allegations to the Ararat Shriners organization, of which Kerns was a member. Kerns reached out to Smedley, claiming Noon or Skidmore may have been involved in the leak. Noon and Skidmore wrote to Smedley again on January 7, 2020, expressing their disappointment that the investigation was closed without either of them being interviewed. In January 2020, both the Officers were removed from the Department's schedule, and by March 2020, they both had been fired.

The Officers brought this lawsuit in state court, alleging Smedley and Kerns violated the First and Fourteenth Amendments by retaliating against them for reporting concerns about the Department. Smedley and Kerns removed the case to federal court and moved for summary judgment, claiming they were entitled to qualified immunity. The district court denied the motion and found there was a genuine dispute of material fact as to whether Smedley and Kerns violated the Officers' First Amendment rights. Smedley and Kerns now appeal.

**II.**

Ordinarily, we review only final decisions of district courts. *See* 28 U.S.C. § 1291. But "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v.*

*Forsyth*, 472 U.S. 511, 530 (1985). We review de novo a denial of summary judgment on the grounds of qualified immunity. *Stoner v. Watlingten*, 735 F.3d 799, 802 (8th Cir. 2013). Thus, in resolving questions of law related to the denial of qualified immunity, we review only whether the Officers' version of the facts is sufficient to overcome qualified immunity. *See Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014); *Scott v. Harris*, 550 U.S. 372, 377–78 (2007); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

## A.

Smedley and Kerns claim they are entitled to qualified immunity. As with every qualified immunity analysis, we are tasked with a two-part inquiry to determine (1) whether a constitutional violation occurred, and (2) whether the right in question was clearly established at the time of the violation. *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014). The district court determined the Officers created a genuine dispute of material fact as to whether Smedley and Kerns violated their First Amendment rights, and therefore Smedley and Kerns were not entitled to qualified immunity. We agree.

Our first inquiry is whether the Officers established a First Amendment violation. To succeed on their First Amendment retaliation claim, the Officers must prove (1) they engaged in protected activity, (2) Smedley and Kerns took an adverse employment action against them, and (3) the protected speech was a "substantial or motivating factor" in that decision to take the adverse employment action. *Henry v. Johnson*, 950 F.3d 1005, 1011 (8th Cir. 2020) (quoting *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009)). On appeal, Smedley and Kerns do not contest whether the Officers suffered an adverse employment action or the causal connection between the two events. Thus, our analysis will focus on the first element—whether the Officers engaged in protected activity.

A public employee engages in protected activity only if the employee "spoke as a citizen on a matter of public concern." *Hemminghaus v. Missouri*, 756 F.3d 1100, 1110 (8th Cir. 2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). We review this as a question of law. *See Buehrle v. City of O'Fallon*, 695 F.3d 807, 812 (8th Cir. 2012). If the speech "owes its existence to a public employee's professional responsibilities[,]" it is not made as a private citizen. *Garcetti*, 547 U.S. at 411.

In this case, the Officers' speech, taken in the light most favorable to them, was made outside their regular duties as police officers. The record reveals only a few of the Officers' duties.[2] Noon was responsible for patrol, responding to calls, rotation of on-call officers, equipment management, assisting on-duty officers, and emergency management. Skidmore's duties included assigning shifts to other officers and vehicle maintenance. As the district court recognized, there are obviously a number of grievances in the Complaint Packet that do not relate to these duties. For example, there is no evidence it was within the Officers' job duties to report Kerns's allegedly corrupt billing practices. Or that they had an obligation to voice their concerns with Kerns's alleged dissemination of explicit images or alleged bias in favor of the Ararat Shriners organization. The Officers claim they had no

---

[2]As noted above, the Complaint Packet concluded by stating, "it is our belief that our oath of office to serve the community requires this action." Smedley and Kerns claim this admission demonstrates the Officers were acting pursuant to their official duties when they submitted their grievances. Although Noon and Skidmore acknowledged making these statements, they did not discuss the contents of the oath, and they claim the oath did not require them to submit the Complaint Packet. Because the contents of the oath are not in the record, we cannot, viewing the facts in the light most favorable to the Officers, conclude the oath required the Officers to submit the Complaint Packet. Without knowing the contents of the oath, we cannot say otherwise.

obligation as employees to report these issues. Because Smedley and Kerns fail to muster any evidence to the contrary, we agree.

We also agree with the district court's assessment that the Officers' speech was a matter of public concern.[3] The issues raised in the Complaint Packet largely concerned the integrity of the Department and its leadership. The Complaint Packet included concerns about corruption, financial mismanagement, and investigative failures. Such allegations are related to institutional integrity—an important governmental function. *See Calvit v. Minneapolis Pub. Schs.*, 122 F.3d 1112, 1117 (8th Cir. 1997) (When the speech in question "involves a matter of political, social or other concern to the community [it] is of public concern."); *Belk v. City of Eldon*, 228 F.3d 872, 878 (8th Cir. 2000) ("Speech that criticizes a public employer in his capacity as a public official . . . addresses matters of public concern.").

Because the Officers spoke as citizens on matters of public concern, the Officers have a possible First Amendment retaliation claim. But this does not end our analysis. We must then resolve whether Smedley and Kerns have produced "evidence to indicate the[ir] speech had an adverse impact on the efficiency of [the Department's] operations." *Lindsey v. City of Orrick*, 491 F.3d 892, 900 (8th Cir. 2007). If there is evidence of disruption, an analysis under the so-called *Pickering* balancing test is necessary. *Hemminghaus*, 756 F.3d at 1111 (referring to *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968)). This is also a question of law for the court. *See Shands v. City of Kennett*, 993 F.2d 1337, 1342 (8th Cir. 1993). Here, the district court found Smedley and Kerns made the threshold showing of disruption to trigger the *Pickering* balancing test. We agree.

"To trigger the *Pickering* balancing test, a public employer must, with specificity, demonstrate the speech at issue created workplace disharmony, impeded the plaintiff's performance or impaired working relationships." *Lindsey*, 491 F.3d

---

[3]Smedley and Kerns do not dispute that portions of the Officers' speech were of public concern.

at 900. In this case, the record shows there were some instances of workplace disharmony and relational discord. For example, the same day the Complaint Packet was submitted, a fellow Department officer texted Noon saying, "Do you have any updates on this [Kerns] thing . . . I really don't care what the resolution is [because] at this point I am the only one tending to the day-to-day operations of the department while the rest of you play whatever game you're playing." Moreover, Skidmore testified that after the Complaint Packet's submission, he noticed relationships deteriorating among officers. Based on these facts, the consequences of the Officers' actions were sufficient evidence of disruption, requiring us to conduct an analysis under the *Pickering* balancing test.

Under *Pickering,* we must decide whether the Officers' statements were "'of such public and social importance as to override [the Department's] substantial interest in maintaining' the efficiency and reputation of the workplace, given the nature of the office . . . ." *Nord*, 757 F.3d at 743 (quoting *Crain v. Bd. of Police Comm'rs of Metro. Police Dep't of City of St. Louis*, 920 F.2d 1402, 1411 (8th Cir. 1990)). To make this determination, the court considers the following factors:

> (1) the need for harmony in the work place; (2) whether the government's responsibilities require a close working relationship; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his or her duties.

*Anzaldua v. Northeast Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 835 (8th Cir. 2015).

The Department "has a significant government interest in regulating the speech activities of its officers in order 'to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence in the law enforcement institution.'" *Hughes v. Whitmer*, 714 F.2d 1407, 1419 (8th Cir.

1983) (quoting *Gasparinetti v. Kerr*, 568 F.2d 311, 315–16 (3d Cir. 1977)).  But we have also recognized that "an employee's first amendment interest is entitled to more weight where he is acting as a whistle-blower exposing government corruption." *Id.* at 1423.  Thus, a "first amendment balancing test cannot be controlled by a finding that disruption has occurred where such disruption occurs because a public employee blows the whistle on the corruption of public officials." *Id.  See also Atcherson v. Siebenmann*, 605 F.2d 1058, 1063 (8th Cir. 1979) ("[T]he creation of disharmony cannot be so feared as to silence the critic who would inform the public of this misbehavior by public officials.") (quoting *Atcherson v. Siebenmann*, 458 F. Supp. 526, 539 (S.D. Iowa 1978)).  As the Fifth Circuit stated, "it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because their speech somewhat disrupted the office." *Porter v. Califano*, 592 F.2d 770, 773–74 (5th Cir. 1979).

Although Smedley and Kerns offer evidence evincing some interoffice disharmony, it is not enough to overcome the Officers' First Amendment interest.  Here, the Complaint Packet alleges, among many other things, financial mismanagement, workplace misconduct, and serious investigative failures.  The public would certainly be interested in these issues.  Moreover, there is no evidence that the Officers were unable to perform their job duties after submitting the Complaint Packet, and this is not an "extreme situation[]," where "the employee unduly breached confidentiality or disrupted intimate working relationships." *Id.* at 774.  These circumstances negate any interests weighing in favor of Smedley and Kerns.  Thus, we conclude the *Pickering* factors weigh in favor of the Officers.

**B.**

Our next determination is whether the Officers' "First Amendment right was clearly established such that a reasonable official would have known firing [them] was unlawful." *Lindsey*, 491 F.3d at 901.  We conclude Smedley and Kerns had fair

notice their alleged adverse actions were unlawful.[4] We have held "no right is more clearly established than freedom of speech [and] . . . speech alleging illegal misconduct by public officials occupies the 'highest rung of First Amendment hierarchy.'" *Hall v. Mo. Highway & Transp. Comm'n*, 235 F.3d 1065, 1068 (8th Cir. 2000) (quoting *Sexton v. Martin*, 210 F.3d 905, 913 (8th Cir. 2000)). *See also Belk*, 228 F.3d at 882 ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.") (quoting *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). Further, in *Sexton*, we held it "clearly established that the disclosure of potential illegal conduct of public officials was a matter of public concern." 210 F.3d at 911. And in *Lindsey*, we held speech by a city employee was protected by the First Amendment because it "amounts to straightforward criticism of the Council's sunshine law compliance." 491 F.3d at 899. Thus, Smedley and Kerns cannot reasonably say they did not understand terminating the Officers for engaging in protected speech violated the Officers' First Amendment rights. After all, "a reasonably competent public official should know the law governing his conduct." *Sexton*, 210 F.3d at 910. The Officers' First Amendment right to be free from retaliation for protected speech was clearly established.

## III.

For the reasons stated above, Smedley and Kerns are not entitled to qualified immunity. We affirm the district court.

_____

---

[4]Smedley and Kerns argue this case is distinguishable from our precedent because the Officers stated their complaints were made pursuant to their "oath of office." However, as previously noted, a material fact question remains as to the contents of that oath. Accordingly, construing the facts in the light most favorable to the Officers, we cannot determine as a matter of law that the Officers' references to their "oath of office" provide a basis for distinguishing this case from our prior decisions.