[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10945
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:08-cv-01201-ACC-KRS

ROGER RITCHIE,

Plaintiff-Appellant,

versus

INDUSTRIAL STEEL, INC.,
a Florida Profit Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 19, 2011)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Roger Ritchie appeals the district court's grant of summary judgment in favor of his former employer, Industrial Steel, in his employment discrimination action brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and the Florida Civil Rights Act, Fla.Stat. § 760.10. On appeal, Ritchie contends that the district court erred in concluding that he had not presented direct evidence of age discrimination. Alternatively, even if his case is viewed as one involving circumstantial evidence, he argues that summary judgment was inappropriate because he showed that Industrial Steel's reasons for terminating him were pretexts for age discrimination. For the reasons stated below, we affirm.

I.

In 2008, Ritchie filed an amended complaint against Industrial Steel raising claims under the ADEA, the Florida Civil Rights Act, and the Employee Retirement Income Security Act ("ERISA"). Ritchie explained that he was discriminated against and harassed on account of his age while working as a truck driver for Industrial Steel, and ultimately was fired and replaced by a younger worker. Industrial Steel moved for summary judgment on all of Ritchie's claims.

Industrial Steel is a structural and miscellaneous steel fabricator and erector. The company constructs individual steel components from architectural designs,

delivers the components to the construction site, and erects the components according to the design plans. Industrial Steel's daily operations are overseen by its general manager, Jeff Weaver, and its vice president, Fred Wilson.

Ritchie worked as a truck driver for Industrial Steel. At the time of his hiring, Ritchie was 64 years old. His immediate supervisors were Robert MacCalla, the plant manager, and Jocelyn Shinabarger, the Production Control Clerk/Dispatcher. The shop foreman, Randall Chaney, also had the authority to give instructions to Ritchie. Shinaberger, Chaney, Wilson, and Weaver all could impose discipline on truck drivers, but only Weaver and Wilson had the authority to fire drivers.

Industrial Steel's plant rules set forth a progressive discipline policy that divided violations into two categories. Offenses in Category I included theft, insubordination, possession of alcohol or drugs, violations of safety rules, and disorderly conduct of any kind, "such as fighting, roughhousing, or any other activity dangerous to life, limb, or property, or disruptive in nature." An employee was subject to immediate discharge for committing a Category I violation. Offenses in Category II included tardiness, unexcused absences, stopping work before break time or quitting time, leaving or entering a work area without permission, failure to clean-up the work area, and unauthorized operation of

machinery. An employee would receive a written warning for a first Category II offense, and would be subject to a pay cut, time off without pay, or immediate discharge for a second offense. Weaver explained that the company did not follow its progressive discipline policy in every case.

Ritchie stated that other employees and supervisors frequently called him derogatory names on account of his age. Weaver referred to Ritchie as an "old man" every time their paths crossed. On one or two occasions, Wilson made remarks about Ritchie's age, but Ritchie understood that Wilson was joking. Other employees and supervisors called Ritchie names such as "snow-cropper," "old school," "old mother fucker," "old bastard," "old son of a bitch," but those individuals were not involved in the decision to terminate Ritchie. As further evidence of age discrimination, Ritchie explained that a younger driver was given better routes and assignments.

Ritchie's supervisors indicated that there were various shortcomings with his job performance. Among other things, Ritchie frequently disrupted his co-workers with "excessive chatter." He needed more time to perform tasks than other drivers who worked for the company. Wilson received several complaints from customers that Ritchie was unable to back his trailer into the desired location. Customers also stated that Ritchie was distracting their employees by

engaging them in conversation.  Chaney stated that he observed Ritchie sleeping in his truck on at least three occasions.  Once, Ritchie received a written reprimand for failing to tie down a load of steel after Chaney had instructed him to do so.  MacCalla, Chaney, and Shinabarger all stated that they verbally reprimanded Ritchie concerning his work performance and his excessive talking, but Ritchie could not recall anyone from management speaking to him about his job performance.   On one occasion, someone asked Ritchie if he had been sleeping in his truck, and he responded that he had been on his lunch break.

One morning, Chaney instructed Ritchie to transport a 70-foot steel beam from the front of the shop to the back of the shop.  When Ritchie was in position to back up the trailer, he asked one of the loaders, Curtis, to stand behind his truck and spot him so that he would not hit a concrete wall at the rear of the facility.  Ritchie backed up the truck and stopped when Curtis instructed him to do so.  He exited the truck and observed that the beam was 15 feet away from the wall.  Ritchie asked Curtis if he should leave the truck hooked up to the trailer.  Curtis was not sure, so he went to ask Ritchie's question to a supervisor.   At that point, Ritchie left the scene in order to do something else.  When he returned two or three hours later, he discovered that the truck had "skidded back" and that "the wall was down."  Chaney assumed that Ritchie had hit the wall, but there were no

witnesses who saw him do so.

The wall incident occurred on a Tuesday.  Ritchie was absent from work on Wednesday and Thursday in order to undergo a nuclear stress test.  When he returned to the office on Friday, MacCalla told him that he had to choose between resigning or being fired.  When Ritchie asked why, MacCalla responded, "hello; the wall."  Ritchie refused to resign, so MacCalla completed a termination notice that stated that Ritchie was being fired for hitting the wall.  MacCalla then told Ritchie to give the notice to Wilson.  After Wilson read the termination notice, he stated, "this doesn't really make sense to me," and he stated that he would investigate the wall incident.  Wilson instructed Ritchie to return to his office on Monday morning.

When Ritchie returned on Monday, Wilson told him, "you're a good employee and you're an excellent driver but I have to go with the decision of corporate and that is to let you go."  Wilson completed a second termination notice that stated that Ritchie was being terminated "due to non-performance and disruption of other employees."  Wilson explained that he decided to fire Ritchie based on his lack of performance and his  "constant chatting throughout the entire company."  He reached his decision after consulting with his lower-level supervisors, Shinaberger, Chaney, and MacCalla, who told him that Ritchie's

6

performance was lacking. Wilson initially testified that Ritchie was terminated both for the wall incident and for his performance problems, but he later clarified that the wall incident factored into Ritchie's termination from MacCalla's perspective but not from his own perspective.

Ritchie believed that he was terminated because the company was concerned about his age and health condition. He noted that he had been fired immediately after taking two days off of work in order to get a nuclear stress test. Ritchie believed that Weaver, who frequently referred to him as an old man, was instrumental in the decision to terminate him. Industrial Steel hired a younger individual to replace Ritchie.

The district court granted Industrial Steel's motion for summary judgment. First, the court concluded that Ritchie had not presented direct evidence of age discrimination because the various derogatory remarks that he identified were not related to the decision to terminate his employment. For example, there was no evidence that a decision maker stated that Ritchie was too old to work at the company. In addition, the court concluded that the comments did not reflect a blatant discriminatory animus against Ritchie on account of his age.

The district court also concluded that Ritchie had not presented circumstantial evidence of discrimination. The court determined that Ritchie had

established a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court also concluded that Industrial Steel had offered a legitimate, non-discriminatory reason for terminating Ritchie—namely, that his work performance was deficient.

With regard to the third step of *McDonnell Douglas*, the district court determined that Ritchie had failed to demonstrate that Industrial Steel's reason for terminating him was a pretext for age discrimination. The court stated that Industrial Steel had followed its progressive discipline policy in Ritchie's case because Ritchie already had received one performance citation, and, under the policy, the company could fire him immediately once he committed a second violation. Therefore, the court reasoned, if Industrial Steel believed, even erroneously, that Ritchie had knocked down the wall, that would have been a sufficient reason to fire him. The court noted that Ritchie had not disputed that he talked a lot, disrupted other employees, and slept on the job.

The district court also explained that Industrial Steel had not offered inconsistent reasons for Ritchie's termination. The court explained that the two termination notices reflected "the stages of the decision-making process and two levels of decision-makers." The court observed that it was reasonable to expect that Wilson, a vice president, would have provided a more complete reason for

8

Ritchie's termination after considering the input of a lower-level supervisor.

Finally, the court denied Ritchie's ERISA claim because he had not presented any evidence that Industrial Steel terminated him in order to interfere with his benefits under an ERISA plan.

## II.

We review a district court's grant of a motion for summary judgment *de novo*. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). We view the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Id.* Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

The ADEA prohibits an employer from discriminating against an employee who is at least 40 years old on the basis of age. 29 U.S.C. §§ 623(a)(1), 631(a). The Florida Civil Rights Act similarly prohibits discrimination on the basis of age. Fla. Stat. § 760.10. Claims under the Florida Civil Rights Act are analyzed under the same analytical framework as claims brought under the ADEA. *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 n. 2 (11th Cir. 1997).

9

"A plaintiff may establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." *Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008). Direct evidence is "evidence that reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Id.* (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age . . . constitute direct evidence of age discrimination." *Id.* (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)) (alteration in original). Discriminatory remarks do not constitute direct evidence if they were not related to the challenged employment action or were not made by the decision maker. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Here, Ritchie failed to present direct evidence of age discrimination. Ritchie identified two decision makers: Wilson and Weaver. Weaver frequently referred to Ritchie as an "old man," and Wilson also referenced Ritchie's age on one or two occasions. Nevertheless, Ritchie did not demonstrate that those remarks were related to the decision to terminate his employment. For example, he did not show that Wilson or Weaver had stated, "fire Ritchie because he is too

10

old," or "Ritchie is too old to work as a truck driver." *See Van Voorhis*, 512 F.3d at 1300 (holding that decision maker's statements that he "didn't want to hire any old pilots" was direct evidence of age discrimination). Because Wilson's and Weaver's comments were not connected to the decision to terminate Ritchie, those comments are not direct evidence of age discrimination. *See Van Voorhis*, 512 F.3d at 1300. The other discriminatory remarks identified by Ritchie do not constitute direct evidence because they were not made by the decision makers. *See Standard*, 161 F.3d at 1330. Thus, the district court correctly concluded that Ritchie had not presented direct evidence of age discrimination.

III.

As noted above, we review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *See Weeks*, 291 F.3d at 1311. We use the *McDonnell Douglas* burden-shifting framework to evaluate ADEA claims that are based upon circumstantial evidence. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*). The plaintiff must first establish a *prima facie* case of age discrimination. *Id.* The burden of production then shifts to the employer to offer a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* The plaintiff must then show that the proffered nondiscriminatory reason merely is a pretext for

11

unlawful age discrimination. *Id.*

The plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). Rather than "simply quarreling with the wisdom of [the employer's] reason," the plaintiff "must meet that reason had on and rebut it." *Chapman*, 229 F.3d at 1030. "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). When an employer asserts that it fired the plaintiff for poor performance, it is not enough for the plaintiff to show that his performance was satisfactory. *Id.* Rather, he must demonstrate that the employer did not believe that his performance was lacking, and merely used that claim "as cover for discriminating against [him] on account of [his age]." *Id.*

A plaintiff may establish pretext by demonstrating that the employer has offered inconsistent reasons for the challenged employment action. *Tidwell v. Carter Products*, 135 F.3d 1422, 1428 (11th Cir. 1998). Nevertheless, the fact that the employer offers an additional reason for the employment decision does not

12

suggest pretext if both of the employer's reasons are consistent. *Id.*

A plaintiff also can demonstrate pretext by showing that the decision maker made discriminatory remarks. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999) (holding that supervisor's statement that he wanted "aggressive, *young* men" like himself to be promoted was "highly suggestive circumstantial evidence" of age discrimination). Such remarks are evidence of pretext because they shed light on the decision maker's state of mind at the time that he made the challenged employment decision. *Id.* On the other hand, stray remarks that are "isolated and unrelated to the challenged employment decision" are insufficient to establish pretext. *See Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002) (supervisor's statement that another employee did not deserve her job because she was a woman was not sufficient to show pretext).

A plaintiff can also show pretext by demonstrating that the employer did not follow its normal procedures in terminating his employment. *See Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination."). Other circuits have explained that, when an employer has established a progressive discipline policy, a plaintiff may establish pretext by showing that the policy was not followed in his case. *See Morris v. City of Chillicothe*, 512 F.3d 1013, 1020 (8th Cir. 2008) ("Deviance

13

from a progressive discipline policy can be evidence of pretext"). Nevertheless, if management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext. *See id.* (holding that employer's failure to follow its discipline policy did not support a finding of pretext because the employer specifically reserved the right to fire at-will employees without a prior written warning); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007) (holding that plaintiff could not establish pretext based on employer's failure to follow its discipline policy because the plaintiff did not offer any evidence that the policy was "rigorously enforced," and because the policy contemplated immediate termination for certain offenses).

In this case, Ritchie failed to establish pretext. First, Industrial Steel did not give inconsistent or shifting reasons for Ritchie's termination. On the Friday after the wall incident, MacCalla completed a termination notice indicating that Ritchie was being fired for hitting the wall. After a further investigation, Wilson issued a second notice indicating that Ritchie was being terminated for performance issues. As the district court observed, the two termination notices simply reflect different stages of the decision-making process. The fact that Wilson changed the reason for terminating Ritchie after further investigation does not show pretext.

Ritchie contends that his alleged performance issues could not have been

14

the cause of his termination because the only person that Wilson spoke to before completing the second termination notice was MacCalla, who considered Ritchie to be a good employee. Wilson testified, however, that he also spoke with Shinabarger and Chaney, and that they informed him that Ritchie's performance was substandard. Thus, Wilson was aware that Ritchie's supervisors had issues with his performance before he made the decision to terminate Ritchie.

Although Ritchie asserted that management never spoke with him regarding his job performance, he did not directly dispute Industrial Steel's assertions that he distracted other employees through "excessive chatter" or took too long to perform tasks. Industrial Steel also presented evidence that some customers complained about Ritchie's performance. Although Ritchie explained that the complaints were meritless, he did not dispute the fact that they were received. If Industrial Steel believed, even erroneously, that Ritchie's work performance was lacking, then the company had a non-discriminatory reason to terminate Ritchie's employment. *See Alvarez*, 610 F.3d at 1266.

In addition, Ritchie cannot show pretext based on the various derogatory comments about his age. Most of the remarks that Ritchie cited were made by employees or supervisors who did not play a role in the decision to terminate him. With respect to statements made by the decision makers, Ritchie testified that

15

Weaver frequently referred to him as "old man," and that Wilson made comments about his age on one or two occasions. As noted above, Ritchie did not link those statements to the decision to terminate his employment. There was no evidence that Weaver or Wilson expressed a preference for younger employees or believed that Ritchie could not perform the job because of his age. *See Damon*, 196 F.3d at 1362 (concluding that employer's comment about wanting "aggressive, *young men*" to be promoted was circumstantial evidence of age discrimination). Weaver's and Wilson's general references to Ritchie's age do not create a genuine issue of fact as to whether age was the real reason for his termination.

Finally, even assuming that the company did not comply with its progressive discipline policy in terminating Ritchie, Weaver testified that the policy was not followed in every case. Therefore, the company's failure to conform to the policy in Ritchie's case does not establish pretext. *See Morris*, 512 F.3d at 1020; *Fane*, 480 F.3d at 541. Because Ritchie did not establish that Industrial Steel's concerns about his job performance were pretextual, the district court properly granted summary judgment in favor of Industrial Steel on his age discrimination claims under the ADEA and the Florida Civil Rights Act.[1]

---

[1]On appeal, Ritchie does not challenge the denial of his ERISA claim or the denial of his motion for reconsideration. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (noting that issues not raised on appeal are deemed abandoned).

Accordingly, we affirm.

**AFFIRMED.**