**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11378

Non-Argument Calendar

_____

THERESA CUSATIS,

Plaintiff-Appellant,

*versus*

ATLANTIC WASTE SERVICES, INC.,

Defendant- Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:22-cv-00156-RSB-CLR

_____

Before NEWSOM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Theresa Cusatis appeals the district court's grant of summary judgment on her retaliation, hostile work environment, and age discrimination claims against Atlantic Waste Services, Inc., her former employer. First, Cusatis argues that the district court erred in dismissing her retaliation claim because she identified protected activities precipitating her removal. Second, she argues that the district court incorrectly dismissed her hostile work environment claim because she established Atlantic Waste's liability and the alleged harassment was sufficiently severe and pervasive. Finally, she argues that the district court should not have dismissed her age discrimination claim because Atlantic Waste's reasons for her termination were pretextual. After careful review, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Cusatis's Employment at Atlantic Waste

Cusatis worked at Atlantic Waste from 1999 through 2020. At all times relevant to this action, Atlantic Waste was managed by Burke and Ben Wall, a father-son duo serving as CEO and Vice President, respectively. One of Atlantic Waste's earliest employees, Cusatis steadily worked her way up from salesperson to Sales

Manager, a role she received around 2013 and her final position at the company before her termination.[1]

While Cusatis excelled as a salesperson, the Sales Manager role came with new managerial and administrative responsibilities that Cusatis did not take to as easily. Atlantic Waste management viewed her as an average performer and recognized that she sometimes lacked attention to detail and robust math and computation skills. Cusatis acknowledged some of these shortcomings.

In 2015, Atlantic Waste brought in Jeff Freas as company Controller and General Manager, mainly to provide support to the company's department heads and improve financial reporting and accountability. Freas often butted heads with Cusatis, and by 2016, Cusatis believed that Atlantic Waste was searching for her replacement. Recognizing that the "requirements of the Sales Manager position outgrew Cusatis's capabilities," in late 2019, Atlantic Waste hired a recruiter to actively search for Cusatis's replacement.

## B. Atlantic Waste's Free-Spirited Culture and Allegations of Misconduct

The workplace culture at Atlantic Waste was loose and lascivious. Coarse language, sexual innuendo, yelling, and age-based teasing abounded. And Cusatis was an equal opportunity offender,

---

[1] The parties dispute whether Cusatis was fired or quit after being forced out as Sales Manager and offered a demotion. This dispute is immaterial as either scenario constitutes an adverse employment outcome. We take no position on the parties' conflicting accounts but generally refer to Cusatis's "firing" or "termination" for stylistic convenience.

trading insults and embarrassing vignettes with her colleagues as a full-throated participant in the company's no-holds-barred culture. As relevant to this action, Cusatis was on the receiving end of several sexual and age-related comments by Freas and the Walls. Freas once questioned her sexual orientation and joked about her having sex with her cousin (whom she brought to the company Christmas party). Burke Wall frequently asked her about her relationship status and once remarked to a group of colleagues, "you all would not believe how old [Cusatis] is." And Ben Wall once described her as "our dinosaur." But Cusatis never complained about these comments nor requested the teasing stop.

Cusatis claims that Atlantic Waste's free-spirited culture took a darker turn in January 2020, when she was twice victimized by Freas in his office. In the first incident, Freas stood up, embraced Cusatis, and attempted to kiss her, but Cusatis turned her cheek. In the second incident, Freas, sitting, spread his legs, placed his hand on Cusatis's back, and tried to pull her onto his lap. He was again thwarted, this time because Ashley Bashlor, the company's senior HR employee, walked in on the encounter. Cusatis did not report or complain about either incident contemporaneously.

### C. Freas's Firing

That next month, February 2020, things came to a head for Jeff Freas. Another Atlantic Waste employee, Jessica Craig, complained to Bashlor and Ben Wall that Freas made unwelcome physical advances and inappropriate comments toward her. Atlantic Waste investigated Craig's complaint; it then demoted Freas from

General Manager, required him to review company anti-harassment policy, directed him not to go near Craig, and cautioned that similar behavior would spell the end of his tenure. As part of the investigation, Ben Wall asked Cusatis whether she had similar issues with Freas, and Cusatis provided him a memorandum detailing the two January incidents and her fractious working relationship with Freas.

Ultimately, Freas could not keep up his end of the bargain. In May 2020, Craig reported that, disregarding management's directive, Freas had started to walk near her desk again. Craig handed in her resignation and that same day Atlantic Waste fired Freas. Some time shortly after her resignation, Craig initiated a municipal criminal proceeding against Freas for sexual battery. Cusatis, along with several other employees, received a subpoena to testify in the criminal proceeding, but Cusatis never ended up testifying.

### D. Cusatis's Firing

In late June 2020, Burke Wall caught wind that the sales team had lost the Ace Hardware account, a longstanding client of the company, because Ace Hardware had lost patience with the sales team's lack of communication and responsiveness. Atlantic Waste had recently lost several other customers, and the loss of Ace Hardware was the tipping point for Burke. He called Cusatis in a fit of anger and warned her that if the sales department did not improve its performance, the company would have to "make some changes." Although Burke had threatened to fire Cusatis before,

this time, frustrated, Cusatis responded, [W]hy don't you start with me?"  Burke agreed, and told Cusatis that her severance package would be ready "in the morning."

About 30 minutes later, Ben Wall called Cusatis and tried to walk back her firing.  Ben offered her the choice between two sales roles, both of which came with a pay-cut and constituted a demotion.  Cusatis declined both offers and never returned to work.

About two years later, on June 24, 2022, Cusatis sued Atlantic Waste, alleging hostile work environment and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*, and an age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623(a)(1), 631(a).  Cusatis alleged that Atlantic Waste fired her because (1) she was old and (2) in retaliation for her complaints about Freas and receipt of a subpoena in the Craig criminal action.  She also alleged that Atlantic Waste was vicariously liable for a hostile work environment fostered by Freas that encompassed both verbal and physical harassment.  Atlantic Waste moved for summary judgment, and on March 25, 2024, the district court granted Atlantic Waste's motion.  This appeal followed.

## II.    STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010).  We can affirm the district court's judgment on any basis supported by the record, regardless of whether the district court decided the case on that basis.  *Club Madonna, Inc. v. City of Miami*

*Beach*, 924 F.3d 1370, 1378 (11th Cir. 2019).  Under Fed. R. Civ. P. 56(a), a district court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In determining whether the movant has met this burden, courts must view all the evidence and make all reasonable inferences in favor of the nonmoving party.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

## III.    ANALYSIS

Cusatis argues that the district court erred in granting summary judgment on her retaliation, hostile work environment, and age discrimination claims.  We disagree, and analyze each issue in turn.

### A. Retaliation

Under Title VII, to establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in a statutorily protected activity, (2) she experienced an adverse employment action, and (3) causation."  *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1337 (11th Cir. 2023).  Protected activities comprise where an employee "has opposed any practice made an unlawful employment practice by this subchapter, or [has] … participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

So to succeed on her retaliation claim, Cusatis must first identify record evidence that she either opposed unlawful Title VII practices or involved herself in some way in investigating or

8                    Opinion of the Court                    24-11378

prosecuting such practices, and that she was fired because of that. *See id.* Cusatis identifies two such pieces of evidence: (1) receipt of a subpoena about a month[2] before her termination requesting her testimony in Craig's municipal criminal action against Freas and (2) complaints she made four months before her termination regarding Freas's conduct. Neither establishes a prima facie case of retaliation.

Taking the subpoena first, we agree with the district court that receiving a subpoena in a municipal criminal proceeding between two former Atlantic Waste employees neither constitutes "oppos[ition]" to unlawful Title VII practices nor "participat[ion[" in a "proceeding" related to unlawful Title VII practices. *See* 42 U.S.C. § 2000e-3(a). Cusatis does not dispute that she never testified in the criminal proceeding. And she also acknowledges that the hearing she was subpoenaed to testify at did not even take place until after her termination. So there is no way to construe Cusatis's receipt of the subpoena as opposing unlawful Title VII practices.

On appeal, Cusatis presses that receipt of the subpoena does, however, constitute "participat[ion]" in a Title VII proceeding. *Id.* She is wrong for two reasons. First, being the passive recipient of a subpoena cannot reasonably be construed as having "participated in [a]…proceeding," *id.*, because the plain meaning of "participate[]" connotes an active role. *See, e.g., Participation, Black's Law*

---

[2] The record does not provide the specific date Cusatis received the subpoena, but it was sometime between Craig's resignation from Atlantic Waste in May 2020 and Cusatis's termination in late June 2020.

*Dictionary* (12th ed. 2024) ("[t]he act of taking part in something, such as a partnership, a crime, or a trial"); *Participate, The American Heritage Dictionary of the English Language* (5th ed. 2022) ("[t]o be active or involved in something; take part"). And while we recognize that the statutory qualifier "participated *in any manner*" imbues "participated" with an "expansive meaning," *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1186 (11th Cir. 1997) (holding that "participated" even encompasses involuntary testimony), the term's meaning cannot be stretched so far to include receiving a subpoena alone.

Cusatis's citation to the Second Circuit's decision in *Jute v. Hamilton Sundstrand Corp.* does not persuade us otherwise. There, the Second Circuit held that a plaintiff "participated in a hearing" under § 2000e-3(a) even though she never ended up testifying because she (1) "volunteered to offer testimony to support another's discrimination lawsuit," (2) was named as a "voluntary and favorable witness" by the plaintiff in that suit, and (3) had provided supportive statements to EEOC investigators. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 169, 174–75 (2d Cir. 2005). Here, Cusatis took no affirmative actions indicating she intended to testify in support of Craig—receiving a subpoena, without more, does not make her a participant in Craig's criminal proceeding. *See Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022) ("mere appearance on a witness list" is not "protected participation in [the plaintiff's] suit.").

The other flaw in Cusatis's argument is that § 2000e-3(a) requires "participat[ion]" in a proceeding "*under this subchapter.*" (emphasis added). In other words, the participation clause protects only "proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). "[A]t a minimum," then, "some employee must file a charge with the EEOC…or otherwise instigate proceedings under the statute for the conduct to come under the participation clause." *Id.* at 1174 n.2. But Cusatis's subpoena concerned Craig's municipal criminal action for sexual battery; it had no connection to any EEOC proceeding. Indeed, Cusatis never claims that Craig ever initiated EEOC proceedings against Freas or Atlantic Waste. Receiving a subpoena in a municipal criminal action does not render Cusatis a "participa[n]t[]" in a "proceeding" "under [42 U.S.C. §§ 2000e–2000e–17]."

We turn now to Cusatis's alternative evidence of protected activities: her February 2020 complaints to Atlantic Waste management and the EEOC about Freas's inappropriate conduct. While such activities are certainly protected activities, they are too temporally attenuated to Cusatis's termination in late June 2020 to support a retaliation claim.

As stated above, Cusatis must also show causation to make out a prima facie case of retaliation. This requires her to demonstrate a "causal relation" between her "statutorily protected expression" and the "adverse employment action." *Thomas v. Cooper*

*Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). Cusatis's only evidence of causation is the temporal proximity between her protected activities and termination, "[b]ut mere temporal proximity, without more, must be 'very close.'" *Id.* at 1364 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). And it is well established that the three-to-four-month period between Cusatis's complaint and her termination sunders any conceivable temporal connection. *See e.g.*, *Clark Cnty. Sch. Dist.*, 532 U.S. at 273–74 (citing cases); *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1328 (11th Cir. 2020); *Thomas*, 506 F.3d at 1364; *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Because there is no meaningful temporal connection between Cusatis's February 2020 complaints and her June 2020 termination, and no other evidence of causation makes up for that temporal disconnect, the district court correctly dismissed that claim.[3]

## B. Hostile Work Environment

The district court dismissed Cusatis's hostile work environment claim on two independent grounds: (1) the alleged

---

[3] As discussed in § III.C below, Cusatis also fails to show that Atlantic Waste's proffered justification for her termination—her work struggles—was mere pretext. Even if Cusatis successfully made out a prima facie case of retaliation, she cannot demonstrate that those protected activities were the true "but-for" cause of her termination. *See Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021). This is all the more so because Atlantic Waste fired Jeff Freas *before* they fired Cusatis.

harassment was not sufficiently severe or pervasive[4] and (2) Atlantic Waste could not be held vicariously liable for the complained-of harassment. We affirm the district court's conclusion that the harassment was not sufficiently severe or pervasive.[5]

To prove a prima facie case for hostile work environment, a plaintiff must establish, among other elements, that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of … her employment and create an abusive working environment." *Trask v. Sec'y, Dept. of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016). The "severe and pervasive" requirement

---

[4] The district court also found that certain bawdy jokes and lewd banter were not "unwelcome" by Cusatis, as she acknowledged that she participated in the company's ribaldrous culture. On appeal, Cusatis does not meaningfully contest this holding, focusing instead on the two incidents with Freas.

[5] While we do not address the district court's holding on Atlantic Waste's liability for Freas's conduct, we note that the record evidence does not clearly establish whether Freas acted in a supervisory capacity to Cusatis. The record contains at least some evidence, that, in light of the summary judgment standard, may suffice to create a genuine dispute about this issue. For example, Cusatis testified that, after Freas's demotion, management notified her that they informed Freas that "Theresa doesn't report to you *anymore*." And a memorandum circulated by management around that same time plausibly corroborates this testimony. The memorandum recounts certain "changes" "effective immediately," including Freas's demotion and that "Theresa Cusatis…will report directly to Burke and Ben Wall." Construing this evidence in the light most favorable to Cusatis, it appears plausible that Freas acted as (at least one of) Cusatis's supervisor(s) until his demotion for inappropriate conduct. However, we refrain from deciding this issue because we conclude that Cusatis's claim fails regardless of whether Freas was or was not her supervisor.

"contains both an objective and a subjective component." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). The objective component comprises: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* To be actionable, harassing conduct "must be [so] extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Isolated incidents (*unless extremely serious*) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quotations omitted) (emphasis added).

On appeal, Cusatis focuses on two incidents in January 2020 involving Freas that give rise to her claim for hostile work environment. On one occasion, Freas interrupted a work conversation with Cusatis by pulling Cusatis toward him in an attempt to kiss her. On another occasion, while Cusatis and Freas were discussing work in his office, Freas, seated, placed his hand on Cusatis's back and attempted to pull her onto his lap, but Bashlor intruded on the encounter and Freas relented. Coupled with certain unstated suggestive comments Freas made over the years, Cusatis maintains that these advances were decidedly sexual, and that because Freas was her supervisor, they constituted actionable harassment.

Our case law counsels otherwise. We have repeatedly held that harassing conduct akin (or even worse) to Freas's is insufficiently frequent, severe, and physically threatening to constitute a

hostile work environment.  For example, in *Mendoza v. Borden, Inc.*, we held that a supervisor's conduct, including (1) rubbing his hip against the plaintiff's hip while touching her shoulder, (2) making sniffing noises while looking at her groin, (3) commenting that he was "getting fired up" by her, and (4) constantly staring at her in a "very obvious fashion," fell "well short of the level of either severe or pervasive…to alter [the plaintiff's] terms or conditions of employment."  195 F.3d 1238, 1247 (11th Cir. 1999).  Likewise in *Gupta v. Florida Bd. of Regents*, a supervisor's placing his hand on the plaintiff's thigh and, on another occasion, lifting the hem of her dress four inches, coupled with constant suggestive comments and actions, did not amount to a hostile work environment.  212 F.3d 571, 584–85 (11th Cir. 2000).

Cusatis cites no countervailing case law suggesting Freas's alleged conduct is actionable.  She points to two incidents over her 5-year work-relationship with Freas and only conclusorily alleges that the incidents were physically threatening.  She also never explains how Freas's conduct affected her performance at work.  Without more robust allegations and evidence, Cusatis's hostile work environment claim cannot succeed.  We thus affirm the district court on this claim.

## C. Age Discrimination

The parties agree with the district court that Cusatis established a prima facie case of age discrimination: she is over 40 years-old and was removed from a job she was generally qualified to do in place of someone younger.  Cusatis disputes, however, the

24-11378                Opinion of the Court                15

district court's conclusion that she failed to show that Atlantic Waste's articulated non-discriminatory basis for firing her—her poor job performance—was pretextual. We agree with the district court that Cusatis's failure to demonstrate pretext proves fatal to her age discrimination claim.

An intentional discrimination claim fails if a plaintiff "does not proffer sufficient evidence to create a genuine issue of material fact regarding whether [a] defendant employer's articulated reasons [for the adverse employment outcome] is pretextual." *Chapman*, 229 F.3d at 1024–25.[6] To demonstrate that an articulated justification is pretextual, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir. 1997)). This is because "[a]n employer

---

[6] Contrary to Cusatis's contention on appeal, this is true whether a plaintiff attempts to prove intentional discrimination via the *McDonnell Douglas* or "convincing mosaic" method. As we explained in *McCreight v. AuburnBank*, the "final question of pretext 'merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.'" *Id.* at 1335 (quoting *Lewis v. City of Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019) (en banc)). "In other words, the pretext prong of *McDonnell Douglas* is just the ordinary summary judgment standard" and "the convincing mosaic approach is—in its entirety—the summary judgment standard." *Id.* Thus, Cusatis's age discrimination claim rises and falls with her ability to vitiate Atlantic Waste's non-discriminatory justification for her termination.

may make an employment decision 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1325 (11th Cir. 2023) (quoting *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015)).  In short, to survive summary judgment, Cusatis must show that Atlantic Waste's discriminatory bias was the "but for" cause of her termination.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–78 (2009); *see Phillips*, 87 F.4th at 1325 ("[T]o escape summary judgment, [a plaintiff] must produce sufficient evidence for a reasonable jury to find that the *true reason* was discrimination." (emphasis added)).  Cusatis fails to do so.

Atlantic Waste has provided sufficient evidence that it reasonably concluded Cusatis simply wasn't up for the job of Sales Manager when it removed her from that position in June 2020.  It is undisputed that company management previously informed Cusatis that she needed to improve performance and lacked requisite math and computational skills.  Cusatis also acknowledges that the immediate precipitant of her removal was the sales team's loss of the Ace Hardware account, a longstanding client of the company.  Cusatis even conceded that "the loss of Ace Hardware" was one of several reasons she "thinks they fired [her] for."

Indeed, in light of Cusatis's concession that the loss of Ace Hardware constituted a reason for her firing, it's hard to see how Cusatis can still maintain that age discrimination, even if present, was the but-for cause of her firing.  As the Supreme Court

24-11378                Opinion of the Court                17

explained, but-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020). By acknowledging that one reason Atlantic Waste chose to fire her was her loss of the Ace Hardware account, Cusatis concedes that the "particular outcome" (her firing) would still "have happened" "but for the purported cause" (age discrimination). *Id.*

Even assuming Cusatis's concession does not have the import we suggest because we should construe her testimony to mean that the loss of Ace Hardware was an *insufficient* reason for her firing but-for Atlantic Waste's ageist bias, she still fails to demonstrate pretext. The evidence Cusatis musters amounts to (1) her self-assessment that she was a good employee, (2) management's attempt to have Cusatis return to the company after firing her, (3) management's purported threat to fire her and the two other oldest employees in her department shortly before her termination, and (4) two stray remarks about her age by Ben and Burke Wall. We agree with the district court that this evidence fails both individually and collectively.

First, the record establishes that Atlantic Waste viewed Cusatis as a middling sales manager ("while Cusatis was not a bad Sales Manager, neither was she a good one") who increasingly lacked the requisite skills to excel in that role. And as stated above, Cusatis acknowledges that management notified her of specific ways she could improve. "[T]hat [Cusatis] thinks more highly of her performance than [Atlantic Waste] does is besides the point.

The inquiry into pretext centers on [Atlantic Waste's] beliefs, not [Cusatis's] beliefs and, to be blunt about it, not on reality as it exists outside of [Atlantic Waste's] head." *Alvarez*, 610 F.3d at 1266.

Second, Cusatis distorts the record in claiming that management wanted her back after firing her—management never sought to restore her to her former position and pay. Instead, management offered her to come back to work at a lower-paying job, which Cusatis herself recognized was a demotion.[7] If anything, management's offer corroborates its contention that it believed Cusatis was not equipped for the Sales Manager role.

Third, Cusatis provides no evidentiary basis for her contention that management threatened to "fire solely the three oldest employees" in sales shortly before firing her. The sole cited source of this purported threat comes from her unverified complaint, and the record contains uncontradicted evidence that the other two employees continued to work at Atlantic Waste well after Cusatis's firing.

Last, Cusatis points to two stray purportedly discriminatory remarks by management—Cusatis was "our dinosaur" and "you wouldn't believe how old she is"—that bear no clear connection to her eventual dismissal. *See Rojas v. Fla.*, 285 F.3d 1339, 1343 (11th

---

[7] Relatedly, this clarification also puts to rest Cusatis's argument that Atlantic Waste advanced two inconsistent reasons for her departure—(1) she was fired or (2) she quit—evincing pretext. In either scenario, which Atlantic Waste may maintain in the alternative, Atlantic Waste determined that Cusatis should not continue in the specific role of Sales Manager.

Cir. 2002) (holding that "an isolated comment unrelated to the decision to fire [the plaintiff]…alone is insufficient to establish pretext"); *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 872–73 (11th Cir. 2011) (employer's "general references to [plaintiff's] age do not create a genuine issue of fact as to whether age was the real reason for his termination"); *cf. Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999) (employer's stated desire to promote "aggressive, young men" was "highly suggestive circumstantial evidence" of pretext). Besides failing to connect these isolated comments to her dismissal after losing the Ace Hardware account, Cusatis also ignores the record evidence that most senior employees at Atlantic Waste were in their 50s and 60s and that it was typical of the company's culture to make age-related jokes.

In sum, Cusatis fails to raise sufficient doubt that Atlantic Waste fired her because of her age rather than her less-than-stellar performance as Sales Manager. The district court correctly dismissed Cusatis's age discrimination claim.

## IV.    CONCLUSION

For these reasons, we affirm the district court's grant of summary judgment.

**AFFIRMED.**